In re the Marriage of Daniel I.
TWEETON, petitioner,
Appellant,

v.

Barbara A. TWEETON, Respondent.

No. C4–96–2025.

Court of Appeals of Minnesota.

April 8, 1997.

Review Denied May 28, 1997.

Jay D. Carlson, Fargo, ND, for Appellant.

Charles A. Krekelberg, Pelican Rapids, for Respondent.

Considered and decided by LANSING, P.J., CRIPPEN, and DANIEL F. FOLEY, JJ.*

## OPINION

CRIPPEN, Judge.

Daniel Tweeton, designated the sole physical custodian of his two minor children, challenges the trial court's conclusion that he has the same child support obligation that would be appropriate if the physical custody arrangement were denominated as joint physical custody. We affirm.

## FACTS

Appellant Daniel Tweeton and respondent Barbara Tweeton were married in 1990 and have two sons, ages six and four. In 1996, the Tweetons entered into a marital termination agreement that provided for joint legal custody and placement of sole physical custody of the children with their father. The stipulated visitation schedule provided that the children would spend alternating weeks with each parent. The trial court incorporated the custody and visitation provisions of the stipulation into its conclusions of law.

Consistent with the stipulation, the trial court determined the issue of child support. The court first determined the statutory guidelines support on half of appellant's yearly income of $27,369, which resulted in a monthly obligation of $267 per month. Applying the same formula to Barbara Tweeton's yearly income of $13,193 resulted in a monthly obligation of $119.59 to appellant. The court then applied a daycare cost reduction of appellant's obligation, pursuant to Minn.Stat. § 518.551, subd. 5(b)(2) (1996). Because Barbara Tweeton's obligation then was the higher, the court ordered that she pay $68 per month, the difference between the two obligations. In sum, the trial court's calculation reduced Barbara Tweeton's obligation in two ways: first, by using only part of her income in the guidelines calculation, and second, by applying an offset for an

obligation of appellant that treated him as a partial child support obligor. Appellant protests only the offset, and he argues that the calculation creates the risk, in the event of a future change in the financial circumstances of the parties, that he will make a net payment of support to the non-custodial parent.

 The trial court denied appellant's post-trial motions, rejecting appellant's argument that the court inappropriately treated his custody arrangement with Barbara Tweeton as joint physical custody, making him a child support obligor pursuant to Minn.Stat. § 518.551 (1996), Minnesota's child support statute.

## ISSUE

Did the trial court err in finding that the custodial parent may be obligated to pay child support to the non-custodial parent?

## ANALYSIS

This appeal presents a legal question, and we need not give deference to the trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984). "The trial court has broad discretion in determining child support," *Broas v. Broas,* 472 N.W.2d 671, 673 (Minn.App.1991), and appellant has not challenged the court's exercise of discretion or its findings regarding the couple's monthly incomes.

 The *Hortis/Valento* formula, previously applied in joint physical custody situations, requires a parent to pay guideline child support only for the periods of time that the other parent has custody of the children. *Valento v. Valento,* 385 N.W.2d 860, 862 (Minn.App.1986), *review denied* (Minn. June 30, 1986); *Hortis v. Hortis,* 367 N.W.2d 633, 636 (Minn.App.1985); *see also Broas,* 472 N.W.2d at 673–74 (applying the *Hortis/Valento* formula in a joint custody situation); *Veit v. Veit,* 413 N.W.2d 601, 606 (Minn.App. 1987) (stating that a calculation of support consistent with the formula described in *Hortis* is appropriate in a 50–50 split of custody).

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

When custody is shared equally, each parent pays half of the guideline amount. *Broas,* 472 N.W.2d at 673–74. The court then applies an offset so that the net paid by the parent with the higher earnings is the difference between the reduced guideline amounts. *See Hortis,* 367 N.W.2d at 636 (correcting the trial court's calculation of the amount of each parent's obligation but allowing an offset of the smaller obligation against the larger). Absent a justifiable guidelines departure, the "method" of *Hortis,* both in calculating a reduced obligation of each party and offsetting one with the other, "should be used" in all joint physical cases. *Valento,* 385 N.W.2d at 862. We conclude that the circumstances of this case call for the same approach taken in *Hortis* and *Valento.* There having been no showing of special cause for departure from the modified guideline calculation, the trial court did not err.

■ Appellant contends that because the court designated him as the sole physical custodian, only Barbara Tweeton can be considered an "obligor" under the Minnesota child support statute, Minn.Stat. § 518.551, subd. 5 (1996). But no language in the statute supports this argument. Indeed, the statute merely provides that support can be ordered from a parent "owing a duty of support," specifying that this may include "either or both parents." Minn.Stat. § 518.551, subd. 5(a). Furthermore, both parents owe an equal duty of support to their dependent children. *See Hortis,* 367 N.W.2d at 635 (stating that "both parents owe an equal duty of support"). Although the noncustodial parent is traditionally considered the "obligor" for the purposes of Minn.Stat. § 518.551 and the custodial parent the "obligee," the statute does not compel these designations. And such a requirement would be contrary to public policy. *See Tammen v. Tammen,* 289 Minn. 28, 30, 182 N.W.2d 840, 842 (1970) (stating that minor children have a "basic right" to support from their parents and that in matters of support, courts are controlled by the welfare of the child as the paramount concern).

■ Similarly, we find no merit in appellant's argument that our decision in *Lutzi v. Lutzi,* 485 N.W.2d 311 (Minn.App.1992), requires us to elevate the form of the custody arrangement, as it is labeled in a stipulation, over the substance of the arrangement, the daily structuring of the care of the children between the parents. *Lutzi* holds that a trial court is not free to abandon the language of a stipulated custody arrangement to reconcile ambiguities between the designation employed and statutory definitions of custody. *Id.* at 314. But *Lutzi* also makes it clear that the substance of the arrangement between the parents, not its label, controls in the context of a requested custody modification. Likewise, we have discovered no basis for rigid respect of form in matters of child support.

■ Appellant contends that he bears additional costs associated with the fact that respondent was not designated as a joint custodian. He argues that the responsibility ultimately rests with him to provide a permanent home for the children. But the record includes no showing that care of the children is more expensive for one parent than the same quantity of care given by the other. And divorce law does not grant or protect for either parent the special freedom to make more permanent investments in housing or other property that benefit the children.

Appellant reasons that respondent has special freedom to walk away from her plan for custodial care, but this is only a consideration of form. The circumstances of either party could leave the other with a greater care obligation in the future. Although the law favors preservation of custodial arrangements, none is unalterable in the event of substantially changed circumstances. And a plan for equally shared custody, chosen here by both parties, and however designated, makes it extremely difficult to predict whether care some years from now will be shared or will be provided mostly by one parent.

We also note that the method of calculating child support described in *Hortis* and *Valento* was not premised upon the legal designation of parents as "joint custodians," but upon the pragmatic observation that the arrangements reviewed in those cases called for provision of a significant amount of physical care by each parent. *See Hortis,* 367

N.W.2d at 635 (stating that the custody arrangement between the parties resulted in each parent being a non-custodial parent for six months a year); *see also Valento*, 385 N.W.2d at 862–63 (stating, where caretaking was divided approximately 43% for one parent and 57% for the other, that each party's support obligation is determined by his or her guideline amount for the period of time the other parent has custody). We can find no rationale for calculating child support differently for a similarly divided custody arrangement such as the Tweetons' agreement, which is designated differently.

Barbara Tweeton suggests that the same result as that reached by the trial court regarding child support could follow from a judicial determination that her custody arrangement with Daniel Tweeton was "*de facto* joint custody." *See Ozenna v. Parmelee*, 377 N.W.2d 483, 487 (Minn.App.1985) (stating that a visitation scheduling granting the non-custodial parent four days of visitation per week resulted in a de facto award of joint custody). We see no utility in this separate line of analysis. The simple fact that each parent provides an equal part of the custodial care for the children dictates the result in this case.

**Affirmed.**