**In re the Marriage of Diane Renee RUMNEY, petitioner, Respondent,**

**v.**

**Mark Wayne RUMNEY, Appellant.**

**No. C9–99–1838.**

Court of Appeals of Minnesota.

June 6, 2000.

Bonnie L. Kleman, Kleman Law Firm, Willmar, for respondent.

Rodney C. Hanson, Anderson, Larson, Hanson & Saunders, P.L.L.P., Willmar, for appellant.

Considered and decided by
SHUMAKER, Presiding Judge,
CRIPPEN, Judge, and DAVIES, Judge.

## OPINION

DAVIES, Judge.

Appellant Mark Rumney challenges the amount of child support awarded in a dissolution action. Appellant argues that the trial court erred in not applying a Hortis/Valento adjustment in child support to reflect the fact that the children spend 39% of their time with him. We affirm, concluding that the Hortis/Valento formula is to be applied as a guidelines application only when the parties have joint physical custody or when, although one parent has sole physical custody, the other parent provides a nearly equal amount of actual physical care.

## FACTS

Appellant and respondent Diane Rumney were married in 1985. They have two children, born in 1987 and 1993. Respondent began dissolution proceedings in February 1998.

The parties signed a marital-termination agreement, resolving most issues. The contested issues were tried at a hearing before the court in June 1999. The trial court issued findings of facts, conclusions of law, and order for judgment in two parts. Part I was the stipulated settlement between the parties; Part II covered the contested issues, including child support.

The parties stipulated that physical custody would be awarded to respondent, with reasonable and liberal visitation for appellant. They also stipulated to a visitation schedule that provides for the children to be with respondent 61% of the time and with appellant 39% of the time.

The trial court decided the issue of child support after a hearing. The court found that respondent's net income was $1,505 per month, with monthly expenses of $1,715. Her child-care expenses averaged $191 per month, after county assistance.

The court found that appellant, due to absenteeism and tardiness, lost a job that had provided a net monthly income of more than $2,000, but the court found the evidence insufficient to rule that he had willfully become underemployed. The court found appellant's net monthly income from his current job to be $1,455. The court also found that appellant could provide medical coverage through his new employer at a more favorable rate than respondent could obtain and ordered him to provide that coverage. The court found appellant failed to submit information regarding his monthly expenses or his child-care expenses.

Applying the guidelines formula of Minn.Stat. § 518.551, subd. 5(b) (Supp. 1999), to appellant's current income, the court ordered him to pay $437 a month in child support. The court also ordered him to pay $48 per month for child-care expenses, except during the months of June, July, and August. Respondent was given

responsibility for the first $75 of extracurricular expenses, and the parties share equally any expense above that amount. Each party was awarded one dependent tax deduction.

The trial court considered applying the Hortis/Valento formula, but concluded that it was not applicable. The court found that, because respondent had custody 61% of the time and appellant had custody just 39% of the time, the parents do not share child-care responsibilities to an extent that justifies application of Hortis/Valento.

## ISSUE

Did the trial court err in failing to apply the Hortis/Valento guidelines in setting appellant's support obligation?

## ANALYSIS

■ Appellant does not dispute the trial court's findings, but rather argues that the failure to apply the Hortis/Valento formula to these findings is a legal error. This court reviews questions of law de novo and does not defer to the decision of the trial court. *Ayers v. Ayers,* 508 N.W.2d 515, 518 (Minn.1993).

■ The trial court has considerable discretion in determining a child-support obligation. *Broas v. Broas,* 472 N.W.2d 671, 673 (Minn.App.1991). Minn.Stat. § 518.551, subd. 5(b), sets forth guidelines based on an obligor's income, however, and a trial court must consider these guidelines. But the guidelines are rebuttable presumptions from which the trial court may deviate. Minn.Stat. § 518.551, subd. 5(i) (Supp.1999). When deviating, the trial court must make written findings addressing why the deviation is in the best interests of the child. *Id.* In making this best-interest determination, the court examines the income of the parents, the needs of the child, the standard of living the child would have enjoyed but for the dissolution, and which party receives the dependency exemptions. Minn.Stat. § 518.551, subd. 5(c) (Supp.1999).

A refinement of the guidelines has evolved for parents who have joint physical custody; each parent then becomes the obligor during the time the children are in the physical custody of the other parent. *Hortis v. Hortis,* 367 N.W.2d 633, 635–36 (Minn.App.1985). This approach was reaffirmed by *Valento v. Valento,* 385 N.W.2d 860 (Minn.App.1986), *review denied* (Minn. June 30, 1986), in which the court stated that, in a joint-physical-custody situation, a party's support obligation is determined by the guidelines during the time the other parent has custody. *Id.* at 862–63.

The use of the Hortis/Valento formula has been extended to include some custody arrangements short of joint physical custody. *Tweeton v. Tweeton,* 560 N.W.2d 746 (Minn.App.1997), *review denied* (Minn. May 28, 1997). In *Tweeton,* although the father was designated as having sole physical custody, the children divided their time equally between the parties. *Id.* at 747. Based on this, this court chose not to "elevate the form of the custody arrangement * * * over the substance"; rather, in such a situation, use of the Hortis/Valento formula was required as a guidelines application, just as with joint physical custody. *Id.* at 748. The Hortis/Valento formula is considered a guidelines calculation in such situations, not a departure from the guidelines. *Id.*

A panel of this court has recently determined that 45% of custodial care may have a significance that calls for use of the Hortis/Valento/Tweeton guidelines formula. *See Rogers v. Rogers,* 606 N.W.2d 724 (Minn.App.2000) (approving use of Hortis/Valento modified guidelines when custody is split 55/45%), *review granted* (Minn. May 16, 2000).

The case before us does not reach the Rogers standard and we fear that any further extension of the modified guidelines will result in both rigidity and uncertainty. We can also predict that parents with physical custody will be reluctant to agree to liberal visitation, foreseeing the

loss of child-support funds with each additional day of visitation. When visitation has financial consequences, each day may become more intensely bargained. Rather than encouraging cooperation with the non-custodial parent, this gives the custodial parent a financial reason to discourage additional visitation.

■ The statutory guidelines were enacted by the Minnesota legislature because of a perceived "failure of the courts to award child support in a fair and consistent manner * * * ." Kathleen E. Pontius,[1] *Minnesota's Child Support Guidelines: Toward a Fair and Rational Standard for Child Support,* 9 Hamline L.Rev. 459, 463 (1986) (quotation omitted). Important to the legislature was that children have a right to the standard of living they would have enjoyed had the marriage not been dissolved. *Id.* at 466. Implicit is the idea that "the non-custodial parent has an obligation to commit a certain amount of income to the children as a priority over other expenses." *Id.* at 480. Thus, the guidelines focus on the needs of the child, rather than on equalizing child-support obligations between the parents. Hortis/Valento has the effect of creating a set-off that reduces the guidelines award. That is a consequence we are unwilling to impose on the facts of this case.

■ Appellant has asked us to adjust the statutory guidelines because he, though a non-custodial parent, provides a "significant amount of physical care." Appellant suggests that this adjustment should be based on the precise percentage of time the children are to be in his physical care. He argues that Hortis/Valento/Tweeton require this as a guidelines application and that not using this formula constitutes a deviation from the guidelines. We decline to continue down this path.

When joint physical custody is not the custodial arrangement, use of a brightline rule to trigger Hortis/Valento is tempting. But using a strict percentage rule as a guidelines approach is contrary to the assumption—basic to the dissolution laws—that support and visitation are separate and distinct issues. *See* Minn.Stat. § 518.175, subd. 1(a) (1998) ("A parent's failure to pay support because of the parent's inability to do so shall not be sufficient cause for denial of visitation."). Because appellant would be allowed to exercise his visitation privileges even if he were unable to meet his support obligation, we do not see that full exercise of visitation privileges justifies a reduction in support.

*Tweeton* was partially premised on the assumption that either parent could be an obligor for purposes of support. *Tweeton,* 560 N.W.2d at 748 ("statute merely provides that support can be ordered from a parent 'owing a duty of support,' specifying this may include 'either or both parents'"). Since the Tweeton decision, this has been clarified by 1998 Minn. Laws ch. 382, art. I, § 4, which amends the statutory definition of "obligor" to read:

> "Obligor" means a person obliged to pay maintenance or support. A person who is designated as the sole physical custodian of a child is presumed not to be an obligor for purposes of calculating current support under section 518.551 unless the court makes specific written findings to overcome this presumption.

Minn.Stat. § 518.54, subd. 8 (1998).

This provision suggests that the statutory guidelines, except in cases of joint physical custody, are presumed to apply without a Tweeton adjustment. It also reminds us that there is a difference between joint physical custody and sole physical custody with liberal visitation. *See* Minn.Stat. § 518.003, subd. 3(c), (d) (1998) ("'Physical custody and residence' means the routine daily care and control and the residence of the child." * * *

---

**1.** Ms. Pontius, counsel to the Senate Judiciary Committee, also held that position at the time the guidelines were formulated.

" 'Joint physical custody' means that the routine daily care and control and the residence of the child is structured between the parties.").

In order to deviate from the guidelines, a district court must make the required findings. Minn.Stat. § 518.551, subd. 5(i). Here, appellant provided 39% of the care for the children; but he presented no evidence that his expenses were increased unduly because of the amount of visitation or that the children's welfare while in his care was diminished because of the support obligation.

▇ We now limit the use of the Hortis/Valento/Tweeton guidelines modification to cases logically comparable to those cases: when parties have joint physical custody or when the non-custodial parent provides a nearly equal amount of physical care, as in *Tweeton* and *Rogers*. In all other cases, the statutory guidelines are presumed to apply without a Hortis/Valento modification and the trial court may make such a modification only by making written findings justifying the adjustment as a deviation. Minn.Stat. § 518.551, subd. 5(i).

### DECISION

The trial court did not err by declining to apply a Tweeton-type reduction to appellant's support obligation.

**Affirmed.**