**In re the Marriage of Rolf Edward ROGERS, petitioner, Appellant,**

v.

**Lisa Anne ROGERS, Respondent.**

No. C2–99–1325.

Supreme Court of Minnesota.

March 8, 2001.

Jane Binder, Christine N. Howard, Minneapolis, for appellant.

Geraldine Carlen Steen, Minnetonka, for respondent.

Gary Alan Debele, Chair, Amicus Committee, Minneapolis, for Amicus Curiae, Minnesota Chapter of the American Academy of Matrimonial Lawyers.

## OPINION

STRINGER, Justice.

Appellant Rolf Edward Rogers (Rolf) and respondent Lisa Anne Rogers (Lisa) were married in 1982 and divorced in 1994.

Three children were born of the marriage.[1] Lisa was granted physical custody of the children following the divorce and Rolf was ordered to pay child support and spousal maintenance. Rolf was granted physical custody of the children in 1998 but continued to pay child support to Lisa. In 1999 Rolf petitioned the court to terminate his child support obligation, correct a clerical mistake that required him to continue paying spousal maintenance for a longer period of time than originally agreed, and award him the right to claim the dependency exemptions for the children for income tax purposes. The district court denied Rolf's request to eliminate his child support obligation and his request regarding the dependency exemptions. The court corrected the clerical error regarding the spousal maintenance obligation but concluded that the child support obligation should be recalculated in light of the ensuing change in income, resulting in an increased child support obligation for Rolf. The court of appeals expressed approval of the 1998 child support order despite Rolf having sole physical custody of the children, but held that the district court erred by increasing the child support obligation *sua sponte* and awarding a dependency exemption to Lisa. The court of appeals remanded for further findings on Rolf's claim of decreased income. We affirm in part, reverse in part and remand for further findings under Minn.Stat. § 518.551, subd. 5(i) (1998).

The heart of our inquiry is whether Minnesota's statutory child support scheme has been properly applied to the facts here. The child support guidelines establish a rebuttable presumption that the child support obligor owes a statutorily fixed percentage of the obligor's income based on the obligor's income and the number of children. Minn.Stat. § 518.551, subd. 5(b) and 5(i) (1998). To overcome the presumption and deviate from the statutorily prescribed child support award, the court must make written findings supporting the deviation and explaining how the deviation serves the best interests of the children. Minn.Stat. § 518.551, subd. 5(i). It has generally been presumed that the parent with sole physical custody will spend the appropriate amount on the children directly and thus it is not necessary to order child support.[2]

Minnesota is one of seven states in which the child support guidelines statute does not expressly provide a formula to address child support where both parents have extensive custodial privileges.[3] To provide a method for resolving child support issues in such cases, an approach called the *Hortis*[4] /*Valento*[5] formula has

---

1. Benjamin was born October 11, 1983, Phillip was born March 15, 1986, and Katherine was born May 11, 1987.

2. *See, e.g., Hortis v. Hortis*, 367 N.W.2d 633, 635 (Minn.App.1985) ("Although both parents owe an equal duty of support, historically the assumption has been that the custodial parent provides his or her share of the support, whether through services or through expenditures not monitored by the court. Statutory enforcement has been applied only against the non-custodial parent who may more easily avoid the obligation.").

3. Jane C. Venohr & Robert G. Williams, *The Implementation and Periodic Review of State Child Support Guidelines*, 33 Fam. L.Q. 7, 18–21 (1999).

4. In *Hortis*, each parent had physical custody of the children for six months out of the year and thus cared for the children 50% of the time, but one parent's income was more than twice that of the other parent. 367 N.W.2d at 634. Noting that the guidelines assume the custodial parent will be contributing his or her share of child support directly, the court of appeals held that the guidelines generally require the court to treat each joint custodial parent as a child support obligor during the period the other parent is physically caring for the child. *Id.* at 635–36.

5. A year later in *Valento v. Valento*, the court of appeals considered a similar case in which the father's income was more than twice that of the mother, physical and legal custody was joint, and the children were in the care of their father 43% of the time and their mother 57% of the time. 385 N.W.2d 860, 861 (Minn.App.), *rev. denied* (Minn. June 30, 1986). The court of appeals held that be-

evolved out of a series of cases decided by the court of appeals interpreting the guidelines to require courts to treat each parent with joint physical custody as a child support obligor as to the portion of time the child spends with the child's other parent. Each obligor is required to pay the child support obligation indicated under the child support guidelines at Minn. Stat. § 518.551, subd. 5(b) (1998), reduced by the percentage of time that the parent has physical custody of the children. A deviation is permitted only if the court determines it is needed to serve the best interests of the children and is supported by the findings required by Minn.Stat. § 518.551, subd. 5(i).

The court of appeals later extended the principle of joint obligation when it held that the statutory guidelines require the application of the *Hortis/Valento* formula where one parent has been granted sole physical custody but both parents spend equal amounts of time caring for the children. *Tweeton v. Tweeton,* 560 N.W.2d 746, 748 (Minn.App.), *rev. denied* (Minn. May 28, 1997). Although each parent in *Tweeton* cared for the children 50% of the time, the court stated that the:

> method of calculating child support described in *Hortis* and *Valento* was not premised upon the legal designation of the parents as "joint custodians," but upon the pragmatic observation that the arrangements reviewed in those cases

called for provision of a significant amount of physical care by each parent. *Id.* Applying this principle, the court of appeals held in this case that the child support guidelines require application of the *Hortis/Valento* formula when both parents provide "significant physical care" for the children, but the court did not define significant physical care. *Rogers v. Rogers,* 606 N.W.2d 724, 727 (Minn.App.2000).

Turning to the circumstances here, the judgment and decree granting the parties' divorce in 1994 incorporated the parties' stipulations and stated that Rolf had a gross monthly income of approximately $5,000 and Lisa had a gross monthly income of approximately $1,200. Lisa was granted "primary" physical custody of the children, $1,190 per month child support, a child care contribution of $130 per month, and rehabilitative spousal maintenance until January 1, 2000. The parties stipulated that the court had no future jurisdiction to award further spousal maintenance, and the decree provided for joint legal custody of the children. Rolf was granted extensive visitation rights with the children and was awarded the right to claim the three children as dependents for income tax purposes until the spousal maintenance obligation ceased. Thereafter the dependency exemptions were to be divided between the parties.[6]

In 1998, on Rolf's motion, "actual physical custody" of the children was awarded to him but the parties continued to have

---

cause the guidelines assume that the parent with physical custody spends the support obligation on the children directly, the proper method of calculating child support is to prorate the amount each parent would owe under the child support guidelines in Minn.Stat. § 518.551, subd. 5(b), by the proportion of time the children spend with the other parent. *Valento,* 385 N.W.2d at 862–63. The *Valento* court indicated that its method of calculating support "should be used in all joint custody situations, unless there are specific reasons for a departure" after consideration of the five factors in Minn.Stat. § 518.17, subd. 4 (1984). *Valento,* 385 N.W.2d at 863. Minnesota Statutes § 518.17, subd. 4, was repealed in 1986, but some of its factors are currently found in Minn.Stat. § 518.551, subd. 5(c).

Act of March 24, 1986, ch. 406, § 9, 1986 Minn. Laws 580, 586.

**6.** The decree provided that Rolf was entitled to the dependency deductions for the three children as long as he was obligated to pay spousal maintenance. Once the spousal maintenance obligation ceased, Lisa and Rolf would annually alternate a 1–2 division of the dependency deductions. When the income tax deduction was no longer available for the oldest child, Lisa and Rolf would each be entitled to take one deduction. When the second child no longer qualified, the parties were to claim the remaining dependency exemption in alternate years.

joint legal custody of the children with Lisa retaining visitation rights with the children approximately 45% of the time. Rolf did not request child support from Lisa incident to the change in physical custody. The district court held however, that under the "pragmatic approach" of *Tweeton*, it was "in the children's best interests that [Rolf] continue to pay some child support to help [Lisa] meet her housing expense" and ordered Rolf to pay approximately $593 in child support per month based on the method of computation outlined in the *Hortis/Valento* formula. Taking the first step of the *Hortis/Valento*—formula the calculation of each party's support obligation as if that party were the child support obligor—the court made findings regarding each party's income and the percentage of income owed as child support under the child support guidelines. *See* Minn.Stat. § 518.551, subd. 5(b). The court found Rolf's monthly net income to be $6,246.00 and he therefore had a guidelines obligation of $2,077.25 per month. Lisa's monthly net income of $1,134.85 from employment and $500.00 in spousal maintenance resulted in a guidelines obligation of $620.68 per month. The court then reduced the obligations of each party proportionately so that each parent would pay child support only for the percentage of time the other parent had physical custody. Forty-five percent of Rolf's guidelines obligation was approximately $934; fifty-five percent of Lisa's obligation was approximately $341 therefore Rolf was obligated to pay Lisa $593.39 per month, the difference when the guidelines obligations are offset.

The current litigation began in April of 1999 when Rolf returned to the district court after having been awarded sole physical custody of the children a year earlier, requesting termination of his $593.39 child support obligation and arguing that there had been a significant change in circumstances because his expenses exceeded his income and Lisa was utilizing less visitation with the children than was awarded to her in 1998. The district court denied Rolf's motion on the basis that he presented no evidence of a substantial decrease in income and its finding that the visitation exercised by Lisa was not significantly less than the 45% time awarded to her in 1998. The court commented that even if visitation were diminished from the 55%–45% split contemplated by the parties, the court would keep the child support award in place because it was vital to facilitate the children's visitation with Lisa.

Rolf also requested that the court correct an error in the 1994 decree regarding spousal maintenance payments. The 1994 decree ordered spousal maintenance for a period of four years but also stated spousal maintenance would be paid from January 1, 1995 through January 1, 2000 a period of five years. The court determined that the termination date was a clerical error and should be corrected in Rolf's favor, ending Rolf's spousal maintenance obligation a year earlier than the date specified in the decree. The district court also held however, that because it had previously considered the erroneous spousal maintenance award in its calculation of the income of the parties when setting child support, the child support award should be increased to reflect the reduction in spousal maintenance.[7] The court denied Rolf's request to retain all three of the income tax dependency exemptions and ordered that one of the dependency exemptions be awarded to Lisa because without spousal maintenance, Lisa needed increased cash flow to maintain a residence that would accommodate overnight visitation with the children.

In a split decision on review, the court of appeals expressed approval of the earlier award of child support to Lisa and held

---

7. The court recalculated the parties' incomes using the figures in its 1998 order, subtracting spousal maintenance from Lisa's income. The court then applied the *Hortis/Valento* formula, resulting in an order of $689.64 per month child support to Lisa, an increase of approximately $96 per month.

that the *Hortis/Valento* formula must be applied where one parent has sole physical custody but the noncustodial parent "provides a significant amount of physical care for his or her children," even if it is not a 50–50 split as in *Tweeton. Rogers*, 606 N.W.2d at 727–28. The court affirmed the district court's determination that the visitation with Lisa had not significantly decreased, but remanded for further findings on Rolf's claim of decreased income. *Id.* at 728. The court reversed the recalculation of child support in conjunction with the correction of the clerical error relating to the timing of termination of spousal maintenance on the basis that under Minn. Stat. §§ 518.64, subd. 1 (1998) and 518.551, subd. 5(i), the district court did not have authority to increase child support *sua sponte. Rogers*, 606 N.W.2d at 728. Finally, the court reversed the district court's ruling relating to the allocation of dependency exemptions and awarded the exemptions to Rolf, stating that utilizing the exemptions as income support in lieu of spousal maintenance was without legal justification.[8] *Id.* at 729.

On appeal to this court Rolf argues he should not be required to pay child support to Lisa and challenges the court of appeals' holding that the *Hortis/Valento* formula is an application of the guidelines and must be applied where the noncustodial parent provides a significant amount of physical care. Rolf further challenges the finding that Lisa's visitation with the children is 45% and asserts that the award of child support to a noncustodial parent contravenes legislative intent that child support be awarded as a percentage of the noncustodial parent's income as provided in the child support guidelines. Minn.Stat. § 518.551, subd. 5(b).

Lisa responds that Rolf's failure to appeal the district court's use of the *Hortis/Valento* formula at the time physical custody was granted to Rolf in 1998 bars him from challenging the district court's application of *Hortis/Valento*[9] and limits the proper scope of review to whether Rolf has presented evidence of a substantial change in circumstances that renders the existing child support order unreasonable and unfair. Lisa maintains that the award of the dependency exemptions to Rolf by the court of appeals should be reversed because the issue was not addressed in the briefs or at oral argument before that court. Lisa also argues that the district court's authority to clarify the inconsistency in the judgment and decree regarding the termination of spousal maintenance under Minn. R. Civ. P. 60.01 necessarily included the authority to adjust the child support award because the court's 1998 child support order was based in part on the clerical error.

I.

■ We begin our analysis with an inquiry into whether the *Hortis/Valento* formula is a proper application of the child support guidelines where one parent has been awarded sole physical custody, a question of first impression before this court.

■ First we consider the child support statutes and their evolution in the history of the child support obligation system in Minnesota. In 1984 Congress adopted legislation requiring, among other things, that all states establish advisory child support guidelines as a condition of federal child support enforcement funding.[10] The act was amended in 1988 to

---

**8.** The dissent would have affirmed the district court's modification of the child support award in conjunction with the correction of the clerical error regarding spousal maintenance, the ruling that there was no substantial decrease in Rolf's income, and the allocation of the dependency exemptions. *Rogers*, 606 N.W.2d at 729–30 (Schumacher, J., concurring in part, dissenting in part).

**9.** The issue of the application of *Hortis/Valento* was addressed by the district court in its conclusions of law and was raised in a petition for review.

**10.** Child Support Enforcement Amendments of 1984, Pub.L. No. 98–378, § 467, 98 Stat. 1305, 1321–22 (1984) (amending 42 U.S.C. §§ 667). Minnesota first adopted child sup-

require states to establish guidelines that would create a rebuttable presumption regarding the correct amount of child support to be awarded in a divorce proceeding.[11] Minnesota complied,[12] and under the guidelines adopted in this state the child support obligation is calculated as a percentage of the obligor's income based on the obligor's income and the number of children.[13] The guidelines establish a rebuttable presumption that the prescribed amount is owed.[14] To impose a higher or lower child support obligation, the court must make written findings supporting the deviation and explain how the deviation best serves the interests of the child. *See* Minn.Stat. § 518.551, subds. 5(c) and (i).[15] As noted above however, the court of ap-

peals has grafted onto the guidelines the *Hortis/Valento* formula. In *Hortis* and *Valento* the court of appeals held that the child support guidelines require the allocation of the child support obligation between the parents where physical custody is shared. The court went a step farther in *Tweeton* and held that the child support guidelines require the child support obligation to be allocated between the parents where one parent is awarded sole physical custody but the physical custody arrangement provides for "a significant amount of physical care by each parent." 560 N.W.2d at 748–49.

■ In 1998 the legislature amended the definition of child support obligor[16] to provide that a person with sole physical

---

port guidelines in 1983 to determine the appropriate allocation of child support for parents receiving public assistance. Act of June 9, 1983, ch. 308, § 7, 1983 Minn. Laws 1748, 1757–59 (codified at Minn.Stat. § 518.551, subd. 5 (2000)).

**11.** Family Support Act of 1988, Pub.L. No. 100–485, § 103, 102 Stat. 2343, 2346–48 (1988) (codified at 42 U.S.C. §§ 666–67).

**12.** *Moylan v. Moylan*, 384 N.W.2d 859, 862–63 (Minn.1986) (recognizing that Act of June 9, 1983, ch. 308, § 17, 1983 Minn. Laws 1748, 1757–59, and its subsequent revision by Act of April 25, 1984, ch. 547, § 16, 1984 Minn. Laws 933, 938, required application of the child support guidelines in all cases, not just those involving public assistance).

**13.** Minnesota Statutes § 518.551, subd. 5(b), provides that: "The court shall derive a specific dollar amount for child support by multiplying the obligor's net income by the percentage indicated * * *."

**14.** Minnesota Statutes § 518.551, subd. 5(i) states:

The guidelines in this subdivision are a rebuttable presumption and shall be used in all cases when establishing or modifying child support. If the court does not deviate from the guidelines, the court shall make written findings concerning the amount of the obligor's income used as the basis for the guidelines calculation and any other significant evidentiary factors affecting the determination of child support. If the court deviates from the guidelines, the court shall make written findings giving the

amount of support calculated under the guidelines, the reasons for the deviation, and shall specifically address the criteria in paragraph (c) and how the deviation serves the best interests of the child.

**15.** Minn.Stat. § 518.551, subd. 5(c) (1998) provides that:

In addition to the child support guidelines, the court shall take into consideration the following factors in setting or modifying child support or in determining whether to deviate from the guidelines:

(1) all earnings, income, and resources of the parents, including real and personal property, but excluding income from excess employment of the obligor or obligee that meets the criteria of paragraph (b), clause (2)(ii);

(2) the financial needs and resources, physical and emotional condition, and educational needs of the child or children to be supported;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved, but recognizing that the parents now have separate households;

(4) which parent receives the income taxation dependency exemption and what financial benefit the parent receives from it;

(5) the parents' debts as provided in paragraph (d); and

(6) the obligor's receipt of public assistance.

**16.** Act of Apr. 10, 1998, ch. 382, art. I, § 4, 1998 Minn. Laws 845, 846 (codified at Minn. Stat. § 518.54, subd. 8). Because no effective date is specified, the amendment was effective August 1, 1998. Minn.Stat. § 645.02 (2000).

custody is presumed not to be a child support obligor and not required to make child support payments unless the court makes specific written findings to overcome the presumption. Minn.Stat. § 518.54, subd. 8 (2000).[17] Thus the "pragmatic" approach in *Tweeton* that ignores the custodial label in favor of the reality of significant responsibility for the physical care of the children by both parents was rejected, absent findings overcoming the presumption that a sole custodian is not a child support obligor. *See* Minn.Stat. § 518.54, subd. 8.

Here, on the basis that Rolf was awarded sole physical custody and cares for the children 55% of the time, the court of appeals expressed approval of the district court's use of the *Hortis/Valento* formula with following comment:

> [I]f a noncustodial parent provides a significant amount of physical care for his or her children, the district court must, under *Tweeton,* apply the Hortis/Valento formula. Also, because the Hortis/Valento formula, and hence *Tweeton,* are an application of the guidelines, if a noncustodial parent does provide a significant amount of physical care, the district court can deviate from the Hortis/Valento/Tweeton formula (i.e. deviate from the

guidelines) only if it makes appropriate findings [under Minn.Stat. § 518.551, subds. 5(c) and 5(i) ].

*Rogers,* 606 N.W.2d at 727. The court of appeals concluded that even though the children are in the physical care of the noncustodial parent less than 45% of the time, the statutory language requires that the *Hortis/Valento* formula be applied. *Id.* at 727–29.[18]

The emphasis on whether physical custody is sole or joint in the 1998 statutory amendment to the definition of child support "obligor" in Minn.Stat. § 518.54, subd. 8 strongly suggests legislative dissatisfaction with the approach by the court of appeals in *Tweeton, Rogers* and *Rumney* relying on the percentage of time children are in the physical care of the noncustodial parent. When this 1998 amendment is considered in the context of Minn.Stat. § 518.551, subd. 5 (1998), a comprehensive process for determining child support emerges. An analysis of the needs of the children under the six statutory factors in Minn.Stat. § 518.551, subd. 5(c) is the appropriate method for channeling the discretion of the district court to fashion an arrangement that takes into account the parents' financial condition as well as the

**17.** Minnesota Statutes § 518.54, subd. 8 provides:

"Obligor" means a person obligated to pay maintenance or support. A person who is designated as the sole physical custodian of a child is presumed not to be an obligor for purposes of calculating current support under section 518.551 unless the court makes specific written findings to overcome this presumption.

In 2000 the legislature enacted the Parenting Plan Statute encouraging parties to stipulate to parenting schedules and allowing parties to use alternate terminology to describe the custody arrangement in lieu of stating that one parent has sole custody, but did not alter the language in section 518.54 providing that the sole physical custodian is presumed not to be the child support obligor. Act of Apr. 25, 2000, ch. 444, 2000 Minn. Laws 980.

**18.** In a decision of the court of appeals filed shortly after *Rogers,* the court declined to apply *Hortis/Valento* to offset the child sup-

port owed by a noncustodial father who provided physical care for his children 39% of the time and whose monthly income was slightly less than the mother's. *Rumney v. Rumney,* 611 N.W.2d 71, 72–73 (Minn.App. 2000).

The court reasoned that extending *Hortis/Valento* beyond the noncustodial parent care of 45% in *Rogers* to the 39% in *Rumney* would give parents with physical custody less incentive to grant additional visitation to noncustodial parents, as each day of visitation might have unfavorable financial consequences. *Rumney,* 611 N.W.2d at 73–74. Citing the 1998 statutory amendment to the definition of "obligor," the court determined that it should "limit the use of the Hortis/Valento/Tweeton guidelines modification to cases * * * [in which] parties have joint physical custody or when the non-custodial parent provides a nearly equal amount of physical care, as in *Tweeton* and *Rogers.*" *Rumney,* 611 N.W.2d at 74–75.

needs and best interests of the children. The legislature intended that the percentage of the children's days that are spent with the noncustodial parent not be the determinative factor in the statutory scheme and may be taken into account only in the context of applying the six factors to be considered in setting or modifying child support, or in determining whether a deviation from the guidelines should be approved. Minn.Stat. § 518.551, subds. 5(c) and 5(i). A prescriptive approach in applying the guidelines based solely on the amount of time the noncustodial parent spends with the child as has emerged in *Hortis, Valento* and *Tweeton* is at odds with the legislative scheme.

Further, the statutory presumption against treatment of the parent with sole physical custody as a child support obligor is equally at odds with the application of the *Hortis, Valento* and *Tweeton* approach to sole physical custody arrangements. The presumption can be overcome by meeting the requirements for a deviation from the guidelines under Minn.Stat. § 518.551, subd. 5(i), but the 1998 statutory amendment reemphasizes the legislature's overriding concern for the best interests of the child and its intent that deviations from the guidelines be governed by Minn.Stat. § 518.551, subds. 5(c) and 5(i) rather than the percentage of time the children are in the care of the noncustodial parent. Therefore we hold that application of the *Hortis/Valento* formula where one parent has sole physical custody is a deviation from the guidelines that must be supported by consideration of the statutory factors in Minn.Stat. § 518.551, subds. 5(c) and 5(i).[19]

Because the district court awarded sole physical custody to Rolf in 1998, when this matter came back before the district court in 1999 on Rolf's motion to terminate child support and spousal maintenance and award him the dependency exemptions, the district court and later the court of appeals erred in failing to consider the 1998 legislative amendment to section 518.54, subd. 8 providing that a person designated the sole physical custodian of the children is presumed not to be a child support obligor "unless the court makes specific written findings to overcome this presumption." Minn.Stat. § 518.54, subd. 8. The premise that the *Hortis/Valento* formula is an application of the child support guidelines where both parents provide significant care for the children is erroneous. The 1998 amendment to Minn.Stat. § 518.54, subd. 8 compels the conclusion that *Hortis/Valento* is not to be applied in circumstances of sole physical custody, absent findings of grounds for deviation from the guidelines under Minn.Stat. § 518.551, subd. 5(i). We therefore remand to the district court for further findings under Minn.Stat. § 518.551, subds. 5(c) and 5(i) and determination whether the presumption that Rolf is not a child support obligor has been overcome.[20]

## II.

■ The second issue we consider is the court of appeals' ruling that the dis-

---

**19.** We express no opinion regarding whether the application of the *Hortis/Valento* formula is appropriate in a joint custody situation as that matter is not before us.

**20.** Amicus curiae, the Minnesota Chapter of the American Academy of Matrimonial Lawyers, contends that this area of the law is so murky this court should adopt the three-part test for deviations from the statutory child support guidelines espoused by the Supreme Court of Louisiana in *Guillot v. Munn,* 756 So.2d 290, 300 (La.2000). The Louisiana test requires the court to determine whether: 1) the visitation is extraordinary rather than "typical"; 2) whether the extra time spent with the noncustodial parent results in a greater financial burden on that parent and a lesser financial burden on the custodial parent; and 3) whether the application of the guidelines would be counter to the best interest of the child or inequitable to the parties. *Guillot,* 756 So.2d at 300. The approach suggested by amicus places great emphasis on the amount of time the children spend with the noncustodial parent however, and therefore is not in accord with our legislative scheme in Minn.Stat. § 518.551.

trict court failed to consider Rolf's claim that his income had decreased when it denied Rolf's motion for termination of his child support obligation. Because of the broad discretion given the district court to provide for the support of the children in a dissolution, reversal is warranted only if the district court's ruling is clearly erroneous. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). The district court's modification of child support will not be reversed absent an abuse of discretion. *Hennessy v. Stelton*, 302 Minn. 550, 550, 224 N.W.2d 926, 927 (1974) (per curiam).

■ To establish a rebuttable presumption that the existing child support order is "unreasonable and unfair" the moving party may show a change in the earnings or needs of the party or the children that would result in a new order at least 20% and $50 a month higher or lower than the current order. Minn.Stat. § 518.64, subd. 2(b)(1) (2000). The district court noted in its order that Rolf did not claim that he had suffered a substantial decrease in his income. As Rolf acknowledged in his brief to the court of appeals, modification to the child support order based on his alleged decrease in income would result in a reduction of 15% which is insufficient to meet the statutory threshold in Minn.Stat. § 518.64, subd. 2(b)(1). The court of appeals' remand for further findings regarding Rolf's income is therefore unnecessary.

Rolf waived an evidentiary hearing on his contention that the district court and the court of appeals failed to recognize that the child support order should be reduced because Lisa was not taking advantage of the visitation awarded to her in 1998. Based on affidavits submitted by the parties, the district court found that the actual visitation schedule was close to the 45–55% split ordered in 1998 and the missed visitation amounted to little more than minor changes in the visitation schedule.[21] The court of appeals held that the

record supported the district court's findings and we agree.

### III.

■ Next we turn to the court of appeals' ruling that the district court did not have authority to modify the child support order in the absence of a motion to modify and an inquiry into the parties' incomes and present circumstances under Minn. Stat. § 518.64 (2000). The district court may correct a clerical error at any time under Minn. R. Civ. P. 60.01, and the inconsistency regarding the date of termination of spousal maintenance was a clerical error. The 1998 order required $593 per month in child support until Rolf's spousal maintenance obligations expired in January of 2000. When the date was corrected to January of 1999, Lisa's income was reduced retroactive to January 1, 1999. The district court recalculated the child support obligation in the same manner as before, substituting the correct income figures. In these unique circumstances, it was within the discretion of the district court to adjust the child support obligation incident to correction of the clerical error. We reverse the court of appeals' ruling that the district court did not have authority to recalculate the child support obligation in conjunction with correction of the clerical error.

### IV.

■ Finally we address the court of appeals' ruling reversing the district court's denial of Rolf's motion requesting that he be awarded the income tax exemptions for all three children.

The district court awarded one dependency exemption to Lisa until only one child qualified as a dependent and directed that the remaining exemption be alternated on a yearly basis, as set forth in the original judgment and decree. The dis-

---

**21.** The issue of how much time Lisa spends with her children is irrelevant, in any event, absent findings that overcome the presump-

tion that Rolf is not an obligor pursuant to Minn.Stat. § 518.54, subd. 8.

trict court noted its concern that Lisa have enough cash flow to maintain sufficient accommodation for the children on overnight visits in light of the termination of spousal maintenance and concluded that an award of all three of the exemptions to Rolf would not be in the best interests of the children. In reversing the district court, the court of appeals stated that dependency exemptions should not be used as income support in lieu of spousal maintenance and held that the district court abused its discretion by following the terms of the original decree without considering the fact that physical custody had changed.

The Internal Revenue Code states that upon dissolution of a marriage the parent with primary custody of a minor child is entitled to claim the child as a dependent. 26 U.S.C. § 152(e)(1) (2000). The code does not preclude state district courts from allocating tax dependency exemptions to a noncustodial parent incident to the determination of child support and physical custody.[22] In light of the district court's consideration of the relative resources of the parties in awarding the dependency exemption, there was sufficient evidence to support the district court's conclusion that it would not be in the best interests of the children to award all three federal and state income tax dependency exemptions to Rolf. Therefore the court of appeals' ruling regarding the district court's award of the exemptions is reversed.

In sum, we affirm the ruling of the court of appeals that the evidence was sufficient to support the district court's finding that Lisa's visitation with the children had not significantly decreased. We reverse the court of appeals regarding Rolf's claim of decreased income because we find that a remand and additional findings are unnecessary. We reverse the court of appeals as to modification of Rolf's child support

obligation incident to the correction of a clerical error and as to the award of tax exemptions. We reverse the court of appeals' ruling that the *Hortis/Valento* formula must be applied to a custody arrangement in which one parent has sole physical custody but both parents provide a significant amount of physical care. We remand to the district court for proceedings with respect to these rulings. In light of our holding that application of the *Hortis/Valento* formula is a deviation from the guidelines where sole physical custody has been awarded to one parent, we also remand to the district court for further findings under Minn.Stat. § 518.551, subds. 5(c) and 5(i) and consideration of whether the statutory presumption that the sole custodian is not a child support obligor has been overcome.

Affirmed in part and reversed in part.

---

22. *See, e.g., Hughes v. Hughes,* 35 Ohio St.3d 165, 518 N.E.2d 1213 (1988), *cert. denied,* 488 U.S. 846, 109 S.Ct. 124, 102 L.Ed.2d 97 (1988). *Contra Voelker v. Voelker,* 520 N.W.2d 903 (S.D.1994).