**In re the Marriage of Michael R. BLONIGEN, Petitioner, Respondent,**

v.

**Bonnie Jo BLONIGEN, Appellant.**

**No. C7–00–1019.**

Court of Appeals of Minnesota.

Jan. 16, 2001.

David W. Buchin, Buchin Law Office, St. Cloud, MN, (for respondent).

Gregory S. Walz, Walz Law Offices, St. Cloud, MN, (for appellant).

Considered and decided by TOUSSAINT, Chief Judge, CRIPPEN, Judge, and PETERSON, Judge.

## OPINION

PETERSON, Judge

This appeal is from a district court order that modified a child-support magistrate's order for child support. We affirm.

## FACTS

The marriage of appellant-mother Bonnie Jo Blonigen and respondent-father Michael Blonigen was dissolved in 1999 pursuant to a marital-termination agreement that was adopted by the district court. Under the agreement, the parties received joint legal and joint physical custody of their two children, and the issue of child support was reserved. Mother was granted physical custody of the children from Sunday evening through Friday evening during the school year and during the months of June and July. Father was granted physical custody of the children every weekend from Friday evening through Sunday evening and during the month of August.

In February 2000, a hearing was held before a child-support magistrate to determine child support. Following the hearing, the child-support magistrate concluded:

> Although the present arrangement of the parties constitutes more than what is typically described as reasonable visitation, [mother] nevertheless maintains primary custody of the children. It is appropriate to calculate [father's] support obligation utilizing the Minnesota statutory guidelines, but deviating downward to recognize the one month during which [father] has custody of the children.

The magistrate determined that father's support obligation under the guidelines in Minn.Stat. § 518.551, subd. 5(b) (1998),

was $513 per month. The magistrate made a downward deviation from the guideline amount to account for father's custody of the children during August and ordered father to pay $449 per month in child support.

Father moved for review of the child-support magistrate's order by the district court. Father requested that the district court adjust his support obligation to reflect the amount of time he had custody of the children. Neither party submitted a transcript of the hearing before the child-support magistrate.

The district court determined that because the parties agreed to joint physical custody in their marital-termination agreement, father was entitled to a child-support offset under the Hortis/Valento formula for determining child support in joint-physical-custody cases. The court found that father has physical custody of the children 33% of the year and mother has physical custody of the children 67% of the year. The court determined the child-support obligations of both parties under section 518.551, subdivision 5(b), applied an offset for each party according to the amount of time each has custody of the children, and ordered father to pay mother $208.79 per month in child support.

Mother moved to have the district court reconsider its findings of fact, conclusions of law, and order. The district court denied mother's motion to reconsider and stated that under Minn. R. Gen. Pract. 372.05, subd. 5,[1] it was authorized to modify the child-support magistrate's order upon motion by a party.

### ISSUES

I.    Did the district court owe any deference to the child-support magistrate

when reviewing the magistrate's order under Minn.R.Gen.Pract. 372.05, subd. 2?

II.    Did the district court err when it determined that the parties have joint physical custody of their children, and therefore, that father's child support obligation should be determined using the Hortis/Valento formula?

III.    Was the district court required to review a transcript of the hearing before the child-support magistrate when reviewing the magistrate's order?

IV.    Did the district court correctly apply the Hortis/Valento formula?

### ANALYSIS

#### I.

Mother argues that the district court's reduction of child support was improper because the district court did not address the magistrate's conclusion that mother maintains primary custody of the children. Mother characterizes the magistrate's conclusion as a determination that the custody arrangement is, in essence, a sole-physical-custody arrangement. She contends that the district court should not have rejected this determination without addressing the magistrate's findings regarding where the children live and who has physical custody during the relevant times.

Under Minn.R.Gen.Pract. 372.01,

[a]ny party may bring a motion for review of the decision and order or judgment of the child support magistrate. * * * At the request of either party, the motion for review may be brought before either the child support magistrate who issued the order or a district court judge.

On review,

---

1. The Interim Expedited Child Support Process Rules, which were adopted by order of the Minnesota Supreme Court on June 23, 1999, applied to this proceeding when it was before the district court. By court order on December 17, 1999, those rules were codified as rules 351 to 375 of the General Rules of Practice for the District Courts. The June 23, 1999, order that adopted the Interim Expedited Child Support Process Rules, provides that the interim rules remained in effect through June 30, 2000.

[t]he child support magistrate or district court judge must make an *independent* review of any findings or other provisions of the child support magistrate's decision and order for which specific changes are requested in the motion. The child support magistrate or district court judge may approve or modify the decision and order of the child support magistrate, or may remand the matter to the child support magistrate with instructions. If any findings or other provisions of the child support magistrate's decision and order are approved without change, the child support magistrate or district court judge must specifically state in the order that those findings and other provisions are affirmed but need not make specific findings or conclusions as to each point raised in the motion. If any findings or other provisions of the child support magistrate's decision and order are modified, the child support magistrate or district court judge need only make specific findings or conclusions with respect to the provisions that are modified.

Minn.R.Gen.Pract. 372.05, subd. 2 (emphasis added).

■ "Independent" means, "Free from the influence, guidance, or control of another or others; self-reliant." *The American Heritage Dictionary of the English Language* 917 (3rd ed.1992). Thus, the requirement that the district court make an independent review of findings and provisions in the magistrate's decision means that the district court was to make its review free from the influence, guidance, or control of the magistrate. The district court was not required to act with deference to the magistrate and was free to reach its own conclusion with respect to the proper characterization of the parties' custody arrangement. In short, the district court was to review the magistrate's decision de novo. *See Tri–State Land Co.*

v. *City of Shoreview,* 290 N.W.2d 775, 776 (Minn.1980) (holding that trial court erred in not affording appellant "a de novo or independent review of its claim"). Mother's contention that the district court improperly rejected the magistrate's characterization of the custody arrangement without addressing the magistrate's findings incorrectly assumes that the district court was to act with deference to the magistrate.

Under Minn.R.Gen.Pract. 372.05, subd. 2, the district court was required to address individual findings or provisions of the child support magistrate's decision only if the court approved or modified a finding or provision. This simply means that findings of the magistrate that are not approved or modified by the district court do not become part of the district court's decision.

The district court specifically stated in its order that it affirmed the child support magistrate's findings regarding the income of each of the parties and the finding that father's child support obligation under Minn.Stat. § 518.551, subd. 5(b), is $513.00 per month.[2] The court made independent findings regarding the amount of time each of the parties has physical custody of the children when it found that father has physical custody 33% of the time and mother has physical custody 67% of the time. The court also found:

The parties' Marital Termination Agreement, adopted by this Court, provided for joint legal and joint physical custody of the parties' two minor children. As Such, [father] is entitled to child support offset under the *Hortis/Valento* formula for determining child support in joint physical custody cases.

Based on these findings, the district court calculated father's child support obligation using the Hortis/Valento formula.

**2.** The court also made a finding that corrected an error in the caption of the magistrate's order.

## II.

■ Mother argues that when viewed as a whole, the terms of the dissolution judgment do not support the district court's conclusion that the parties share joint physical custody of their children. We disagree.

■ The rules of contract construction apply when construing a stipulated provision in a dissolution judgment. *In re Estate of Rock,* 612 N.W.2d 891, 894 (Minn.App.2000). Under those rules, the court must consider the stipulation as a whole to determine whether an ambiguity exists. *In re Complaint of Info Tel Communications, LLC v. U.S. West Communications, Inc.,* 592 N.W.2d 880, 884 (Minn. App.1999), *review denied* (Minn. July 28, 1999). If no ambiguity exists, interpretation is a question of law subject to de novo review. *Stowell v. Cloquet Co-op Credit Union,* 557 N.W.2d 567, 571 (Minn.1997).

■ Parties will be bound by a stipulated custody arrangement:

> Custody provisions contained in a stipulated decree must be accorded a good deal of deference, in that they represent the terms specifically agreed to by the parties and adopted by the court. Where * * * the parties have agreed, by stipulated decree, to joint legal custody and joint physical custody, and the court has accepted that denomination, the parties will be bound by it.

*Ayers v. Ayers,* 508 N.W.2d 515, 520 (Minn.1993).

The dissolution judgment, which was based on the parties' marital-termination agreement, states:

> The parties are hereby granted joint physical custody of the children according to the following schedule:
>
> a) During the school year and the summer months of June and July, the children shall reside primarily with [mother]. The children shall be with [mother] from Sunday evening through Friday evening during the school year. The children shall re-side with [father] every weekend from Friday evenings until Sunday evening.
>
> b) During the summer month of August the children shall reside with [father].
>
> c) The parties shall alternate legal holidays and birthdays of the minor children. For those holidays which fall on a Friday, Monday, or a weekend, the parent with the care of the children for the holiday shall also have the children on that weekend, but if this disrupts the regular non-holiday weekend rotation, then the parent whose weekend is disrupted shall have the next weekend with the children.

■ " 'Joint physical custody' means that the routine daily care and control and the residence of the child is structured between the parties." Minn.Stat. § 518.003, subd. 3(d) (1998).

> Joint physical custody does not require an absolutely equal division of time; rather, it is only necessary that physical custody of the child be the shared responsibility of the parties.

*Hegerle v. Hegerle,* 355 N.W.2d 726, 731–32 (Minn.App.1984).

The district court did not err when it determined that the parties share joint physical custody of their children. The parties chose to describe the custody arrangement in their marital-termination agreement as joint physical custody, and under the agreement, the routine daily care and control and residence of the children is structured between the parties. The fact that the children spend two thirds of their time at mother's home and one third of their time at father's home and, therefore, that mother's home can be considered to be their primary residence, is not a sufficient basis for us to conclude that the custody arrangement is not joint physical custody. *See Ayers,* 508 N.W.2d at 519–20 (appellate court bound by joint-physical-custody label even though stipula-

tion structured so that children resided primarily with one parent).

### III.

Mother argues that the district court improperly modified the child support magistrate's decision without reviewing the transcript of the hearing before the child support magistrate. Minn. Rule Gen. Pract. 372.05, subd. 5, provides:

> A transcript of the hearing in dispute is not required, but may be ordered by a party. If the party chooses to submit a transcript, it must be ordered according to the procedure in Rule 373. If a party orders a transcript, the motion must state the date the transcript was ordered.

Although either party could have chosen to submit a transcript of the hearing before the magistrate, neither party chose to do so. Because neither party chose to submit a transcript, the district court did nothing improper when it reached its decision without reviewing a transcript.

### IV.

Mother argues that the district court incorrectly applied the Hortis/Valento formula to determine father's support obligation because it incorrectly calculated the amount of time she and father have custody of the children. We disagree. Child support matters are within the district court's discretion, and its decision will not be reversed absent a clear showing of an abuse of discretion. *Reck v. Reck,* 346 N.W.2d 675, 677 (Minn.App.1984).

Application of the Hortis/Valento formula "should be used in all joint physical [custody] cases." *Tweeton v. Tweeton,* 560 N.W.2d 746, 748 (Minn.App. 1997) (quotation omitted), *review denied* (Minn. May 28, 1997). The formula requires a parent to pay the child support amount indicated by the guidelines only during the periods of time that the other parent has custody of the children. *Id.* at 747; *Valento v. Valento,* 385 N.W.2d 860, 862 (Minn.App.1986), *review denied* (Minn.

June 30, 1986). "The court then applies an offset so that the net paid by the parent with the higher earnings is the difference between the reduced guidelines amounts." *Tweeton,* 560 N.W.2d at 748 (citing *Hortis v. Hortis,* 367 N.W.2d 633, 636 (Minn.App. 1985) (offsetting the smaller obligation of one parent against larger obligation of other parent)).

Father's child-support obligation was determined based on the district court's finding that he has custody of the children 33% of the time, which is 120 days per year. Mother argues that father does not have custody 33% of the time. The district court did not explain how it determined that father has custody 33% of the time. But the dissolution judgment grants father custody of the children "[d]uring the school year and the summer months of June and July * * * every weekend from Friday evenings until Sunday evening." This means that father has the children every weekend during 11 out of 12 months each year. There are generally 104 weekend days in a year or, on average, eight and two-thirds weekend days per month. This means that father has the children for slightly more than 95 weekend days per year. In addition, father has the children during the month of August. The dissolution judgment does not indicate that mother has the children on the weekends in August, but even if we assume that she does, father has the children for at least 22 days in August. This means that father has the children for at least 117 days each year on weekends and during August. Father also has the children on alternating holidays and birthdays, and although the number of days this entails will vary from year to year, it will add to the total number of days father has the children each year. Consequently, the children will reside with father for more than 117 days each year. We, therefore, conclude that the district court did not err when it calculated father's child support obligation based on its conclusion that father has custody of the children 33% of the time.

## DECISION

When reviewing the child-support magistrate's order, the district court did not owe any deference to the child-support magistrate. The district court was not required to review a transcript of the hearing before the child-support magistrate. The district court did not abuse its discretion when it determined that the child-custody arrangement the parties agreed to is joint physical custody. The district court did not incorrectly determine the amount of time that father has custody of the children.

**Affirmed.**

CRIPPEN, Judge (dissenting)

No doubt the labeling of physical custody as "joint" has emotional impact, good or bad, for some parents. But as defined by Minnesota statute, the legal impact of the label is at best meaningless. At worst—whenever the courts give weight to its use—it is a persistent source of injustice.[3] That is the case in this matter.

The label "joint physical custody" can be used indiscriminately as a substitute for sole custody with visitation. The statute provides: " 'Joint physical custody' means that the routine daily care and control and the residence of the child is structured between the parties." Minn.Stat. § 518.003, subd. 3(d) (2000). Nothing in the law precludes a 90%/10% care-sharing arrangement with the label "joint."

Use of the label may give a benefit where none is justified. The *Hortis* decision recognized that when a joint-custody arrangement results in each parent being a noncustodial parent for six months of the year, that parent should pay child support only during those six months when the child resides with the other parent. *Hortis v. Hortis*, 367 N.W.2d 633, 635 (Minn. App.1985). Even in *Valento*, where we said that the same method should be used to calculate support in all joint custody situations, the parents divided physical care 57%/43%. *Valento v. Valento*, 385 N.W.2d 860, 862 (Minn.App.1986), *review denied* (Minn. June 30, 1986);[4] *see also Rumney v. Rumney*, 611 N.W.2d 71, 75 (Minn.App.2000) (adopting a "nearly equal" amount of physical care standard for applying the Hortis/Valento formula and rejecting application of the standard for a 61%/39% arrangement).

The majority opinion disregards the potential injustice of using the Hortis/Valento formula in situations of unequally shared care. Are there considerations that outweigh this risk? The majority finds it important that the parties are free to negotiate an agreement with the knowledge of its consequences. Would the injustice of an inappropriate application of Hortis/Valento be overcome by the importance of having an inflexible rule on the subject?

In fact, upholding the freedom for negotiation of the parties increases the potential for injustice. The Hortis/Valento formula becomes a bargaining chip that is not apt to be corrected by the trial courts. Parties in negotiations can evade the guidelines by tying threats or promises to demands for the joint-physical-custody label. A party is free to demand concessions in exchange for a guidelines support obligation or, worse, exchange threats for litigation of claims for an artificial joint-physical-custody designation.

The use of labels that have automatic, peculiar consequences leads to destruction

---

**3.** However defined or used, the label is often flawed in its focus on the rights of parents to the exclusion of the best interests of the child. For this reason and others, the legislature has adopted a concept that focuses on actual care of the child, a plan for parenting that employs no labels. Minn.Stat. § 518.1705 (2000).

**4.** *Valento* must be read cautiously insofar as it suggests rote application of the joint-physical-custody standard in cases where shared care is unequally divided. Taken to its logical and unjust extreme, *Valento* could stand for the proposition that the court must apply the Hortis/Valento formula when parties designated as joint custodians split custody 90%/10%.

of the underlying aims of child-support law, including the statutory guidelines. Recognizing the injustice of labels from the vantage point of a noncustodial parent with shared custody, we have applied the Hortis/Valento formula even though one parent was designated sole physical custodian. *Tweeton v. Tweeton,* 560 N.W.2d 746, 748–49 (Minn.App.1997), *review denied* (Minn. May 28, 1997). We also employed the endangerment standard on a custody-modification proposal when a parent, who was designated the sole physical custodian, wished to substantially restructure an equally shared custody arrangement by moving the children several miles away and to a new school district. *Lutzi v. Lutzi,* 485 N.W.2d 311, 315 (Minn.App. 1992). We should be equally diligent in diminishing the significance of the joint-physical-custody label for the sake of an appropriate guidelines determination.

*Tweeton* and similar decisions cannot be read without appreciating the recognition given to labels in some cases. But none of these seemingly conflicting holdings, none of which bear directly on the issue of child support, justifies disregarding the evidence of a pattern of caretaking that materially conflicts with the label used in a judgment. *See Frauenshuh v. Giese,* 599 N.W.2d 153, 158–59 (Minn.1999) (following the statutory standard for the sole-physical-custody label employed in the termination agreement, yet not precluding application of a different standard for a showing of de facto joint physical custody); *Silbaugh v. Silbaugh,* 543 N.W.2d 639, 641–42 (Minn. 1996) (enlarging the consequences of a sole-physical-custody arrangement because of the label in circumstances where there was no evidence of a claim of shared or nearly shared care). Singularly, *Ayers v. Ayers,* 508 N.W.2d 515, 520 (Minn.1993), upholds the significance of a label somewhat at odds with the real custody arrangement in the case—the joint-physical-custody label where one parent evidently was twice as active in caretaking. *Ayers* permits use of the best-interests standard for the opponent of a proposed move of the children to another state. *Id.* The breadth of the holding is limited because the decision is pointedly aimed at the important child-custody goal of protecting the children's relationships with each parent.[5]

I further hazard the observation that our application of statutory law in this case has constitutional implications. The decision to adhere to the labels in this case lends itself to an equal-protection challenge. The equal-protection clause requires that "persons similarly situated be treated similarly" unless the distinction serves a legitimate governmental interest. *Lidberg v. Steffen,* 514 N.W.2d 779, 784 (Minn.1994) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)); *LaChapelle v. Mitten,* 607 N.W.2d 151, 165 (Minn.App.2000), *review denied* (Minn. May 16, 2000). First, the distinction treats similarly situated persons differently: both groups provide the same pattern of care for their children and are obligated by court order to support those children, but different standards apply to caretakers denominated as joint-physical custodians and those denominated as noncustodians. Second, there is no reasonable basis for the distinction based on necessity or circumstances because the children would need the same amount of support regardless of the legal category their parents fit into. Third, although the labeling distinction may be germane to the purpose of the law in cases where a noncustodial parent provides equal care for the child, it serves no distinctive need under other circumstances. The law may be unconstitutional and void in its application to some but constitutional as to others. *Cf. City of St. Paul v. Dalsin,* 245 Minn.

5. In contrast, this court has previously elevated form over substance and applied the endangerment standard to a custody-modification case because of the sole-physical-custodian label in a situation where the parent opposing removal of the child from the state was a de facto joint-physical custodian. *Wilson v. Wilson,* No. C6–97–562, 1997 WL 559735, at *5–8 (Minn.App. Sept.9, 1997) (Crippen, J., dissenting).

325, 330–31, 71 N.W.2d 855, 859 (1955) ("A legislative act may be unconstitutional and void in its application to some persons or separable subject matters and constitutional as to others.").

Because the child-support magistrate correctly elevated substance over form, a result the trial court should have applied to justly and lawfully decide the case, I respectfully dissent.