*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0004**

In re the Marriage of:
Jessica Michael Hudson, petitioner,
Appellant,

vs.

Daniel Joseph Hudson,
Respondent.

**Filed July 14, 2014**
**Affirmed**
**Halbrooks, Judge**

Olmsted County District Court
File No. 55-FA-13-849

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, Minnesota; and

Diane M. Kaer, Apple Valley, Minnesota (for appellant)

M. Sue Wilson, Amy Yanik Meisel, M. Sue Wilson Law Offices, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Halbrooks, Judge; and

Toussaint, Judge.[*]

―――――――――――

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Following a modification of child custody based on endangerment, appellant argues that (a) the record does not support the district court's finding that the original custody arrangement endangered the child and (b) the district court erred by failing to enforce the parties' parenting consultant agreement. We affirm.

## FACTS

Appellant Jessica Michael Hudson and respondent Daniel Joseph Hudson were married in August 2003. Their only child together, F.G.H., was born in 2007. After the parties separated in May 2009, respondent continued living in Olmsted County, while appellant moved to Dakota County with F.G.H.

The parties' marriage was dissolved on January 20, 2010, by stipulated judgment and decree entered in Dakota County. F.G.H. was two years old at the time. The stipulated judgment awarded the parties joint legal custody, with sole physical custody to appellant and reasonable and liberal parenting time to respondent. The judgment provides that the parties "shall" mutually select a parenting consultant and submit any parenting issues that they are unable to resolve to the consultant for determination. But the parties never selected a parenting consultant.

F.G.H. has a significant history of constipation. The parties dispute the severity of her condition and how long it has been present, as well as the role each has played in addressing and managing it. Beginning in January 2011, a series of physicians evaluated and treated F.G.H. for chronic constipation. By December 2012, F.G.H. showed no signs

of improvement. In January 2013, respondent moved the district court for a modification of custody, requesting primary physical custody. The district court held a series of hearings on the motion. On April 24, the district court ruled that respondent had made a prima facie case for modification based on endangerment and ordered a temporary change in physical and legal custody pending an evidentiary hearing.[1] A three-day hearing was held in late May, after which the district court granted respondent's motion.

The district court found that although F.G.H. had "difficulties with constipation since she was very young," F.G.H.'s "constipation problem ha[d] become acute" since the time of the original custody order. The district court found that F.G.H. experienced severe constipation while in appellant's sole physical custody because, although appellant would take F.G.H. to some medical appointments, she did not adequately follow through with the treatments and consistency necessary to manage this "delicate" medical situation. The district court found that F.G.H.'s bowel had been repeatedly, severely impacted over a lengthy period of time, but that when custody transferred temporarily to respondent in late 2012, her condition improved and she made remarkable progress. By late February, five-year-old F.G.H. was toilet trained, and by May 2013, she was "doing extremely well." The district court attributed the significant improvements in F.G.H.'s health to a consistent regimen and medical plan in respondent's care.

The basis of the district court's transfer of custody was the danger to F.G.H.'s physical and emotional health due to appellant's inadequate management of her medical

---

[1] Due to an order for protection granted in a separate proceeding on behalf of F.G.H. against appellant, F.G.H. had already been living with respondent since December 31, 2012.

condition. The district court found that "[t]here is a psychological component of chronic constipation for a [five] year-old soon to start kindergarten." The district court ruled that F.G.H.'s "present environment in [appellant's] primary care endangers her physical and emotional health, as [appellant] did not obtain and follow through with effective medical care necessary to address the pain and misery caused by chronic constipation," and other statutory criteria were also met. The district court therefore granted respondent's motion for sole physical custody and also awarded him temporary sole legal custody as it relates to medical decision-making. Appellant was awarded unsupervised, reasonable and liberal parenting time. This appeal follows.

**DECISION**

**I.**

"Appellate review of custody modification . . . cases is limited to considering whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotation omitted). Appellate courts "set aside a district court's findings of fact only if clearly erroneous." *Id.*; *see also* Minn. R. Civ. P. 52.01. A district court's finding is clearly erroneous if this court "is left with the definite and firm conviction that a mistake has been made" when "giving deference to the district court's opportunity to evaluate witness credibility," *Goldman*, 748 N.W.2d at 284 (quotations omitted), and "view[ing] the record in the light most favorable to the trial court's findings," *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002).

4

A district court may modify an existing custody order if it finds that circumstances have changed for the child, a modification would serve the best interests of the child, the child's present environment presents a danger to her physical or mental health or emotional development, and the harm caused by a change in custody is outweighed by the advantage presented by the change. Minn. Stat. § 518.18(d)(iv) (2012). Appellant challenges the district court's findings on these statutory requirements.

**Changed Circumstances**

The district court found that circumstances have changed since the original custody order because "[F.G.H.]'s constipation problem ha[d] become acute." Appellant argues that there has been no change in circumstances because F.G.H.'s constipation difficulties preceded the original custody order. The record supports a finding that F.G.H. has had intermittent constipation issues since infancy, but that no significant attention or management was required until January 2011. The original custody order is dated January 20, 2010.

In January and April 2011, respondent took F.G.H., then age three, to see Dr. C., who had significant concerns about F.G.H.'s degree of constipation and the lack of consistent management of this condition at home. In January and again in May, Dr. C. attempted to contact appellant to discuss these concerns. When appellant did not respond, Dr. C. reported her concerns to Dakota County social services. Child protection eventually interviewed appellant and determined that the family was not in need of services.

5

In June 2011, appellant addressed F.G.H.'s constipation at a regular checkup with Dr. Y., who offered two options to manage the condition. Appellant opted for the less aggressive approach. F.G.H. saw no medical professionals regarding constipation concerns from June 2011 until August 24, 2012, when she had an appointment scheduled by respondent with a gastrointestinal specialist, Dr. E., at the Mayo Clinic. Dr. E. recommended a bowel cleanout, as Dr. C. had recommended in January 2011. Appellant declined to follow through immediately with the recommended cleanout and cancelled the tests ordered by Dr. E. to rule out a structural anomaly. Appellant instead took F.G.H. to Dr. B., who confirmed that a cleanout was necessary, and then to the University of Minnesota gastroenterology clinic, which also recommended cleanouts. Months later at a follow-up appointment, Dr. E. found F.G.H. to be "completely impacted."

Because the record amply supports the district court's finding that F.G.H.'s medical condition had become acute since the date of the original custody order, we conclude that this finding justifies the district court's determination that circumstances have changed.

**Endangerment of F.G.H.**

To modify custody, the district court must determine that the child is currently endangered in some way, physically, emotionally, or developmentally. Minn. Stat. § 518.18(d)(iv). Lack of endangerment is fatal to a motion to modify custody under Minn. Stat. § 518.18(d)(iv). *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007). No grounds for modification except endangerment were found by the district court. The existence of endangerment is a fact question that this court reviews for clear

6

error. *See Sharp v. Bilbro*, 614 N.W.2d 260, 263-64 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000). The district court found that "[F.G.H.]'s present environment in [appellant's] primary care endangers her physical and emotional health, as [appellant] did not obtain and follow through with effective medical care necessary to address the pain and misery caused by chronic constipation."

Appellant argues that the district court erroneously focused on the 2011 time frame. Although the district court made findings about this time period in its order, it did not place any special focus on it. The district court also found that appellant did not seek any medical advice or treatment for F.G.H.'s constipation between the June 2011 appointment with Dr. Y. and the August 2012 appointment with Dr. E. And the district court made specific findings about the August 2012 – May 2013 time frame in its order. The district court then determined:

> In [appellant's] primary care [F.G.H.] made periodic progress regarding the constipation, but that progress was always reversed and undone—as evidenced by [F.G.H.] again being impacted in December, 2012. [Appellant] seemed reluctant to engage and follow-through in medical care efforts initiated by [respondent]—for example, those with [Dr. C.] and [Dr. E.]. [Appellant's] attempt to blame [F.G.H.'s] reversals on inconsistent care provided by [respondent] during weekends [F.G.H.] was with him is unpersuasive, given [respondent's] demonstrated vigilance and energetic efforts concerning the problem; and the clear progress [F.G.H.] has made in [respondent's] primary care since January, 2013.

We are not left with the definite and firm conviction that these findings are in error. Three different medical clinicians, two of whom were chosen by appellant, determined between August 2012 and January 15, 2013, that F.G.H. was constipated

enough to require a cleanout. The first cleanout resulted in nine large bowel movements, and F.G.H. vomited with seven of them. Similarly difficult cleanouts were required in the following months. But when custody transferred to respondent in early January 2013, F.G.H. quickly showed "remarkable" progress.

Appellant argues that F.G.H.'s improvement in respondent's care does not support a determination that she was endangered in appellant's care. But Dr. C. and Dr. B. both testified about the seriousness of F.G.H.'s medical condition. And appellant's preferred provider agreed that F.G.H. required bowel cleanouts. It is undisputed that multiple difficult cleanouts were recommended by at least four different clinicians from January 2011 through January 2013, including in August, September, and December 2012. The district court also noted the potential psychological ramifications of starting kindergarten under these circumstances. It is undisputed that F.G.H. was not fully toilet trained until she was five years old and in respondent's custody. The district court did not err in relying in part on F.G.H.'s dramatic improvement in 2013 to determine that there had been a lack of appropriate management before then.

Appellant also argues that her actions—or inactions—do not rise to the level of criminal endangerment or medical neglect and thus cannot support a determination of endangerment under the custody-modification statute. But she cites no authority for the proposition that these other standards must be satisfied for the district court to order a modification of custody.

The district court's findings that constipation "is a medical concern of significant consequence if not properly treated" and that F.G.H.'s condition also had emotional

8

ramifications are supported by the record. We are not left with a definite and firm conviction that a mistake has been made. We conclude that the district court made proper, supported findings about F.G.H.'s condition and did not clearly err when it found that F.G.H. was endangered in appellant's care.

**Best Interests of F.G.H. and Balance of Harms**

Even with a finding of endangerment, the district court shall not modify a prior custody order unless it finds that the modification is necessary to serve the best interests of the child. Minn. Stat. § 518.18(d). The district court found that a change in custody is in F.G.H.'s best interests, applying the factors identified in Minn. Stat. § 518.17, subd. 1 (2012). The district court found that, except for stability and continuity (Minn. Stat. § 518.17, subd. 1(7)), the statutory factors did not favor one party over the other. The district court found that although F.G.H. had lived with appellant from the parties' dissolution in 2010 through December 2012, the environment that appellant provided was not "satisfactory," and thus a continuation of that environment was not in F.G.H.'s best interests. The district court noted that its primary focus in considering F.G.H.'s best interests was "maximizing the likelihood that she will get the best, most effective care for her constipation condition for as long as it takes for that condition to be permanently remedied or cured." The district court determined that a change in custody was in F.G.H.'s best interests because respondent had taken the initiative to provide the care necessary to successfully address F.G.H.'s chronic constipation, and appellant's less-aggressive approach over time was ineffective and harmful.

The district court also found that the harm likely caused by a change in primary residence was outweighed by the advantage of F.G.H. being in respondent's sole physical custodial care. These findings are supported by the record and are also consistent with the guardian ad litem's recommendation. We conclude that the district court did not abuse its discretion in ruling based on ample evidence in the record that F.G.H.'s condition was serious and that appellant had endangered F.G.H.'s physical and emotional health by failing to address it adequately. The district court properly determined that a change in custody served F.G.H.'s best interests and that the harm caused by a modification was outweighed by its benefits. We therefore conclude that the district court did not abuse its discretion in modifying custody under Minn. Stat. § 518.18(d)(iv).

## II.

Appellant argues that the district court erred by modifying the original custody order before the issue had been submitted to a parenting consultant as required by the parties' stipulated judgment. Appellant raised this issue to the district court in her post-trial motion for a new trial or amended findings. The district court denied the motion, ruling that (1) appellant had not properly raised the issue, (2) appellant had refused to cooperate with respondent's attempts to select a parenting consultant, and (3) issues relating to child endangerment need not be first addressed by a parenting consultant. We agree with the district court's resolution of this issue.

When appellant responded to the motion for modification of custody, she did not argue that the motion was improper because the issue had not been submitted to a parenting consultant. The prospect of utilizing a parenting consultant was first raised by

10

appellant's counsel orally at the April 16, 2013 prima-facie-case hearing. Appellant never filed a written motion or briefed the issue to the district court until after the district court had ordered a permanent change in custody. The district court determined that the issue was not timely raised but nevertheless addressed it in some detail.

The term "parenting consultant" is not used in the Minnesota statutes, but in practice refers to "a creature of contract or of an agreement of the parties which is generally incorporated into . . . a district court's custody ruling." *Szarzynski*, 732 N.W.2d at 293. Stipulations in divorce proceedings are favored by courts "as a means of simplifying and expediting litigation" and "are therefore accorded the sanctity of binding contracts." *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). The rules of contract construction apply when construing such stipulations. *Blonigen v. Blonigen*, 621 N.W.2d 276, 281 (Minn. App. 2001), *review denied* (Minn. Mar. 13, 2001).

The judgment provides that "[t]he parties have agreed to use a Parenting Consultant to assist them with post-decree issues they cannot resolve regarding their child. The Parenting Consultant shall be named by mutual agreement of the parties or by obtaining a list of five qualified persons and by alternately striking names." It then provides that parenting disputes will be submitted to the consultant before a party seeks relief from the district court.

Because the parties never selected a parenting consultant, the parenting-consultant stipulation may have been an unenforceable agreement to later agree. *See Mohrenweiser v. Blomer*, 573 N.W.2d 704, 706 (Minn. App. 1998) ("[A] letter creating an agreement to negotiate in good faith in the future is not enforceable because it does not constitute the

11

parties' complete and final agreement."), *review denied* (Minn. Feb. 19, 1998). And because appellant rebuffed respondent's efforts to select a parenting consultant, she is ill-positioned to demand that disputes be submitted to one. *Cf. Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984) ("Generally, contract performance is excused when it is hindered or rendered impossible by the other party.").

The district court ultimately determined that, regardless of whether the issue was properly raised or the stipulation enforceable, the best interests of the child trumped any agreement by the parties to use a parenting consultant. The stipulation was more than three years old by the time of the evidentiary hearing, and the parties had not yet selected a parenting consultant. The district court determined that the precarious nature of F.G.H.'s medical situation demanded immediate resolution.

Generally, the best interests of the child trump procedure in making custody determinations. *See Kimmel v. Kimmel*, 392 N.W.2d 904, 908 (Minn. App. 1986) ("While the court may not have strictly adhered to the statutory procedure, this was an emergency situation which compelled the court to apply its broad equitable powers. . . . We cannot say it was an abuse of discretion for the [district] court to act quickly to protect this child."), *review denied* (Minn. Oct. 29, 1986). We conclude that even if the issue was properly raised to the district court and the stipulation was enforceable, the district court acted within its discretion by ruling on respondent's motion without first requiring submission of the dispute to a parenting consultant.

**Affirmed.**