*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1823**

In re the Marriage of:
Jo Ellen M. Healy, petitioner,
Appellant,

vs.

John Henry Healy, Jr.,
Respondent.

**Filed June 22, 2015
Affirmed
Hudson, Judge**

Hennepin County District Court
File No. 27-FA-000271133

Jason Schellack, Autism Advocacy & Law Center, LLC, Minneapolis, Minnesota (for appellant)

Brittany Stephens Pearson, Michael P. Boulette, Lindquist & Vennum LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Worke, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

In this spousal-maintenance and child-support dispute, appellant-mother argues that the district court (a) reduced her maintenance award based on its misapplication of the statutory factors and improper attribution to her of income; (b) should have awarded

her child support and failed to make findings of fact justifying its deviation from the guideline support amount; and (c) abused its discretion by failing to conduct an evidentiary hearing. We affirm.

**FACTS**

The district court dissolved the marriage of appellant Jo Ellen M. Healy and respondent John Henry Healy, Jr. by amended judgment in 2004. The parties have two children: K.H., born in 1992, and D.H., born in 1995. D.H. has been diagnosed with special needs and requires substantial, individualized care and supportive services. At the time of the dissolution, appellant, a former teacher, was acting as D.H.'s primary care provider and did not work outside the home; respondent was employed as a financial advisor. The district court granted the parties joint legal custody of the children and appellant sole physical custody. Appellant was granted $3,000 per month child support and $2,500 per month maintenance.

In October 2012, after a support and maintenance dispute, the district court approved the parties' stipulation on those issues. Pursuant to the stipulation, the district court ordered maintenance of $3,000 per month from May 15, 2012 until February 28, 2013; and $4,250 per month from March 1, 2013 until January 31, 2014. The stipulated order also provided, in part:

> Both parties anticipate and expect that [appellant] will obtain appropriate employment and be able to contribute to her own self-support. The support agreements reached by the parties in this Stipulation are expressly linked to the anticipation and expectation that [appellant] will earn income and contribute to her own self-support. The parties anticipate that spousal maintenance may be reduced in January, 2014 in

2

light of [appellant's] receipt of appropriate employment income by said time.

The order further provided that either party may schedule a review hearing in January 2014 "for a de novo review on the issue of [appellant's] appropriate employment and ability to contribute to her own support." Pursuant to the stipulation, the district court also ordered $2,000 per month child support for D.H. from May 15, 2012 until February 28, 2013. After that, when D.H. turned 18, respondent's child-support obligation would be reduced to $0. The parties thereafter devised a special-needs trust for the benefit of D.H. Respondent agreed to place $500 monthly into the trust, which would be available for mutually agreed-upon disbursements for D.H. Any disagreements on disbursements would be resolved by binding arbitration. In May 2013, the district court also appointed a third-party guardian for D.H. The court's corresponding order was not appealed.

In November 2013, respondent moved to reduce his maintenance obligation effective February 2014. He alleged that appellant had been working as a substitute teacher for an average of three hours per month and was also working as a personal care attendant for D.H., but earning only $12 per hour for that work. He submitted the report of a certified rehabilitation counselor, who opined that if appellant secured her regular teaching license with 125 hours of training, her education and prior teaching experience would allow her to maximize her earning potential at $40,000 per year in a public-school teaching job, with additional summer work.

3

In response, appellant moved to increase maintenance and re-establish child support. She acknowledged that she had received increased maintenance, and that the parties established the special-needs trust because, when D.H. turned 18, payment of child support would have reduced or eliminated his eligibility for social-security-disability and medical-assistance benefits. But she argued that the administration of the trust had "proven inefficient and cumbersome," with respondent declining to agree to most of her requested disbursements. She alleged that she made good-faith efforts to find employment that did not interfere with D.H.'s school schedule, but her ongoing caretaking responsibilities had precluded her from securing reliable, steady employment. She also sought removal of the third-party guardian, who had moved D.H.'s residence from her home to respondent's home.[1]

The district court denied appellant's request for an evidentiary hearing and issued its findings of fact and order on maintenance and support. The district court reduced maintenance to $700 per month, the approximate difference between the current maintenance amount of $4,250 and an imputed gross monthly income to appellant of $3,500. It found that appellant's argument on maintenance "ignores that the parties specifically stipulated to a de novo review of spousal maintenance, rather than a review based on a change in circumstances." The district court noted that appellant was expected to obtain appropriate employment to contribute to self-support and had provided several options for re-entering the teaching field, with her only expressed concern being that she might be terminated due to an unexpected need to care for D.H. during work

_____

[1] The separate action to remove D.H.'s guardian is currently pending in district court.

4

hours.  The district court supported its attribution of income to appellant with findings that the certified rehabilitation counselor had verified appellant's ability for self-support, that appellant worked 40 hours per week as D.H.'s personal care attendant at $12 per hour and that she only earned a total of $766 for substitute teaching in 2013.  The district court also determined that the four or five job applications appellant made in an 18-month period did not amount to a reasonable job search effort and that she had alleged no efforts to further her education or to obtain a regular teaching license.  The district court observed that D.H. attends school 35 hours per week and was entitled to receive 35 hours of personal-care-attendant (PCA) time and that appellant did not address why she could not use those services for D.H.'s care until she arrived home from work.  The district court found that, although respondent had upheld his portion of the stipulation by paying increased maintenance for an agreed-on period, appellant had failed to uphold her portion, which amounted to bad faith.  The district court also determined that appellant had not demonstrated a change in circumstances and found her revised budget, which had increased 60% in an 18-month period, to be inflated and not credible.

The district court also declined to order a change in child support, finding that, while cumbersome, the process of obtaining reimbursement from the special-needs trust did not constitute a substantial change in circumstances making the current child-support amount of $0 unreasonable and unfair.  The district court found that, assuming that D.H. were to reside  with appellant, her receipt of child support would result in D.H.'s ineligibility for government benefits and would not necessarily be in his best interest. This appeal follows.

5

# DECISION

## I

This court reviews a district court's decision on spousal maintenance for an abuse of discretion. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). The district court abuses its discretion when it resolves the matter in a manner that is "against logic and the facts on [the] record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984).

This court treats the stipulated order as a contract for purposes of construction. *See Nelson v. Nelson*, 806 N.W.2d 870, 872 (Minn. App. 2011) (stating this principle with respect to stipulated dissolution judgments). In interpreting the stipulated order, we consider it as a whole to determine whether ambiguity exists. *Blonigen v. Blonigen*, 621 N.W.2d 276, 281 (Minn. App. 2001), *review denied* (Minn. Mar. 13, 2001). If no ambiguity exists, its interpretation presents a question of law, subject to de novo review. *Id*. "The general rule for the construction of contracts . . . is that where the language employed by the parties is plain and unambiguous there is no room for construction." *Starr v. Starr*, 312 Minn. 561, 562–63, 251 N.W.2d 341, 342 (1977). A contract should be interpreted "in such a way as to give meaning to all of its provisions." *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).

Appellant maintains that, because the stipulated order provided that the issue of maintenance was subject to the district court's de novo review, the district court erred by failing to address all of the statutory factors for awarding maintenance in that review. *See* Minn. Stat. § 518.552, subd. 2 (2014) (stating maintenance factors, including the financial resources of both parties, the time necessary for the maintenance obligee to

6

acquire training to find employment and become capable of self-support, that party's loss in earnings and benefits, the marital standard of living, and the obligor's ability to meet needs while meeting the obligee's needs); *see also LeRoy v. LeRoy*, 600 N.W.2d 729, 733 (Minn. App. 1999) (stating that when reviewing maintenance de novo, the district court must consider statutory factors), *review denied* (Minn. Dec. 14, 1999). In support of her argument, appellant points to the district court's finding that "the parties specifically stipulated to a de novo review of spousal maintenance, rather than a review based on a change of circumstances." She argues that, based on this language, the district court was required to make findings on all of the statutory maintenance factors, and that a remand is required to address those factors. *See Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989) (remanding maintenance issue when findings were inadequate).

We disagree. The stipulated order's plain language provides that either party may seek "de novo review on the issue of [appellant's] appropriate employment and ability to contribute to her own support." It also provides that appellant would receive increased maintenance for an approximate two-year period and that she agreed to seek employment to contribute to self-support. Even more clearly, it states that "[t]he parties anticipate that spousal maintenance may be reduced . . . in light of [appellant's] receipt of appropriate employment income." We therefore read the district court's subsequent order in light of the stipulated order and conclude that the district court's de novo review applied only to the maintenance factors relating to appellant's rehabilitation and employment. Of course, the district court was free to address whether maintenance should be modified based on other evidence of a substantial change in circumstances that would make the current

7

maintenance provision unreasonable and unfair. *See* Minn. Stat. § 518A.39, subd. 2 (2014) (stating that standard). But in doing so, the district court was not required to make findings on all of the statutory maintenance factors. *See Tuthill v. Tuthill*, 399 N.W.2d 230, 232 (Minn. App. 1987) (stating, in the context of a maintenance modification motion, that once the district court found a lack of substantially changed circumstances, a failure to make findings on other maintenance factors did not constitute reversible error); *cf. Peterka v. Peterka*, 675 N.W.2d 353, 360 (Minn. App. 2004) (stating that specific findings on all statutory maintenance factors are not necessarily required "if the findings that were made reflect that the district court adequately considered the relevant statutory factors").

Appellant argues that the findings on her ability to be self-supporting were clearly erroneous. She maintains that the district court's attribution of potential income to her was speculative and failed to recognize her lengthy absence from the workforce, possible loss of earning capacity, lack of employment opportunities, and caregiving responsibility. *See Nardini v. Nardini*, 414 N.W.2d 184, 197 (Minn. 1987) (remanding for an award of permanent spousal maintenance, based on a non-working spouse's 30-year absence from the workforce and uncertain ability to become fully employed). But more recently we have held that *Nardini* does not preclude the district court from considering a permanent maintenance recipient's prospective ability for self-support after reeducation or retraining, even absent a finding of bad faith. *Passolt v. Passolt*, 804 N.W.2d 18, 25 (Minn. App. 2011), *review denied* (Minn. Nov. 15, 2011).

8

A district court properly balances a maintenance recipient's lack of reasonable effort to provide for self-support against that person's inability to provide for reasonable needs, attributing income that, based on expert testimony, could have been produced by reasonable effort. *Hecker v. Hecker*, 568 N.W.2d 705, 710 (Minn. 1997). Appellant challenges the district court's reliance on the rehabilitation consultant's expert opinion, arguing that it was speculative because the consultant did not meet with her, conduct a vocational evaluation, or consider her role as primary caretaker for D.H. But appellant did not challenge the accuracy of the information in the consultant's report, maintaining rather that she had increased living expenses and that caretakers of children with D.H.'s special needs earn less than parents of children without health limitations. We recognize the difficulty of appellant's caretaking duties, should D.H. live with her. Nonetheless, the district court did not clearly err by finding that appellant's alleged increased expenses were not credible and that D.H. had the opportunity to utilize PCA services, which could be used for "bridge" hours until appellant returned home from work. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) (stating that appellate courts defer to district court credibility determination).

Moreover, appellant does not dispute that she agreed in 2012 that she could earn $52,000 yearly after obtaining a regular teaching license, yet she has taken almost no steps to obtain that license or complete additional education. In addition, she has not presented any evidence that her caretaking responsibilities for D.H. have increased since the district court filed the stipulated order. Based on this record, the district court did not clearly err by finding that she had not made reasonable efforts to rehabilitate and did not

abuse its discretion by reducing maintenance to reflect her receipt of potential income in an amount approximately what she would have earned if she had rehabilitated.

## II

A district court order regarding child support will be reversed only when a district court abused its broad discretion "by resolving the matter in a manner that is against logic and the facts on the record." *Bauerly v. Bauerly*, 765 N.W.2d 108, 110 (Minn. App. 2009). This court reviews questions of law relating to support de novo and findings of fact for clear error. *Guyer v. Guyer*, 587 N.W.2d 856, 858 (Minn. App. 1999), *review denied* (Minn. Mar. 30, 1999); *Ludwigson v. Ludwigson*, 642 N.W.2d 441, 446 (Minn. App. 2002).

Appellant argues that the district court erred by failing to order guideline child support for D.H., who meets the statutory criterion for continued support. *See* Minn. Stat. § 518A.34(a) (2014) (setting forth process for determining an obligor's presumptive child-support obligation); *see also* Minn. Stat. § 518A.26, subd. 5 (2014) (including in the statutory definition of "child" "an individual who, by reason of physical or mental condition, is incapable of self-support"). She argues that a statutory presumption exists that D.H. is entitled to support and that the parties' stipulation did not prevent the district court from awarding support in the future.

But as respondent points out, appellant requested modification of the stipulated order's child-support provision, not an initial determination of support. The stipulated order reflected the parties' agreement to modify support to $0, based on the establishment and funding of the special-needs trust. Therefore, the district court did not err by

10

applying the legal standard for support modification, rather than the standard for setting initial support under Minn. Stat. § 518A.34(a). *See Ayers v. Ayers*, 508 N.W.2d 515, 518 (Minn. 1993) (stating that determining the proper statutory standard to be applied is a question of law).

The terms of a child-support order may be modified on a showing of a substantial change in circumstances that makes the terms of the previous order unreasonable and unfair. *See* Minn. Stat. § 518A.39, subd. 2(a) (listing circumstances that constitute substantial change). The moving party bears the burden of proof in a support-modification proceeding. *Bormann v. Bormann*, 644 N.W.2d 478, 481 (Minn. App. 2002). If applying the child-support guidelines to the parties' current circumstances results in a guideline support obligation at least 20% and $75 different from the existing child-support obligation, a substantial change in circumstances is presumed, and a rebuttable presumption exists that the existing child-support obligation is unreasonable and unfair. Minn. Stat. § 518A.39, subd. 2(b)(1).

"[T]he existence of a stipulation does not bar later consideration of whether a change in circumstances warrants modification." *O'Donnell v. O'Donnell*, 678 N.W.2d 471, 475 (Minn. App. 2004) (quotation omitted). Because child support "relates to nonbargainable interests of children," it is "less subject to restraint by stipulation than are other dissolution matters." *Id*. (quotations omitted); *see also Simmons v. Simmons*, 486 N.W.2d 788, 791–92 (Minn. App. 1992) (noting that the welfare of children takes precedence over any stipulated provision in a dissolution judgment).

Nonetheless, this court has held that a stipulated judgment, with findings, may rebut a presumption of unfairness and unreasonableness in a support-modification proceeding. *O'Donnell*, 678 N.W.2d at 477. Here, the district court did not clearly err by finding that mere alleged inefficiency in the reimbursement process of the special-needs trust did not constitute a substantial change in circumstances rendering the current support agreement unreasonable and unfair. The district court noted that the only substantial change in circumstances was that D.H. was no longer residing with appellant. And the district court found that, even if D.H. were to live with her, the receipt of designated child support would adversely affect his qualification for social-security and medical-assistance benefits, which would not be in his best interest. *See* Minn. Stat. § 518A.43, subd. 1(2) (2014) (stating that in deviating from guidelines in setting or modifying support, the court may consider "the extraordinary financial needs and resources, physical and emotional condition, and educational needs of the child to be supported"). We conclude that, under these circumstances, the district court did not abuse its discretion by declining to modify child support. *See, e.g., O'Donnell*, 678 N.W.2d at 476 (concluding that ordinary expenses incurred were insufficient to warrant support modification when both parties were represented by counsel, the support obligee was familiar with the children's expenses, and when "there is no claim or finding that the best interests of the children necessitate a change or were adversely affected by a continuation of the support terms of the original judgment").

**III**

Appellant argues that the district court abused its discretion by declining to hold an evidentiary hearing. "Whether to hold an evidentiary hearing on a motion generally is a discretionary decision of the district court, which [this court] review[s] for an abuse of discretion." *Thompson v. Thompson*, 739 N.W.2d 424, 430 (Minn. App. 2007).

The district court correctly noted that an evidentiary hearing is not required in child-support and maintenance-modification proceedings. Minn. Stat. § 518A.39, subd. 2(g) (2014). Family-law motions are generally decided on written submissions. Minn. R. Gen. Pract. 303.03(d)(1); *see also* Minn. R. Civ. P. 43.05 (stating that "[w]henever a motion is based on facts not appearing of record, the court may hear the matter on affidavits presented by the respective parties"). Appellant argues that the district court should have held an evidentiary hearing to address her appropriate employment, her actual earning capacity, and issues related to D.H.'s residence. The district court, however, was able to adequately consider appellant's employment and earning capacity on the record submitted. And issues regarding D.H.'s residence are more appropriately addressed in the pending action to remove his guardian, who allegedly made the decision to move D.H. to respondent's home. The district court did not abuse its discretion by declining to hold an evidentiary hearing.

**Affirmed.**

13